UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONY LIONEL LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-00811-JPH-MPB |
| ) | |
| MARK SEVIER, ) | |
| JOSEPH, ) | |
| SANFORD, ) | |
| PRIVETT, ) | |
| G. CECIL, ) | |
| PAGE, ) | |
| NEMORE, ) | |
| STORMS, ) | |
| LUNSFORD, ) | |
| DEREK CHRISTIAN, ) | |
| J. FRENCH, ) | |
| DAVIS, ) | |
| ) | |
| Defendants. ) | |

**Order Screening Complaint and Directing Further Proceedings**

Plaintiff Tony Love is a prisoner currently incarcerated at Wabash Valley Correctional Facility. He filed this civil action alleging violations of 42 U.S.C. § 1983 based on his time housed in a segregation unit at New Castle Correctional Facility ("New Castle"). Because Mr. Love is a "prisoner," this Court has an obligation to screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal

1

Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Love names 12 defendants in the complaint: (1) Mark Sevier, Warden of New Castle; (2) Internal Investigator Joseph; (3) Internal Investigator Sanford; (4) Internal Investigator Privett; (5) Classification Supervisor G. Cecil; (6) Case Manager Page; (7) Case Manager Nemore; (8) Lieutenant Storms; (9) Captain Lunsford; (10) Indiana Department of Correction ("IDOC") Central Office Classification employee Derek Christian; (11) Assistant Warden J. French; and (12) Major Davis. He sues all defendants in their individual and official capacities. He seeks compensatory and punitive damages. He also seeks an injunction ordering New Castle to stop violating its policies. He bases his complaint on the following allegations:

Mr. Love was formerly housed in segregation at another facility. He was then transferred to New Castle after he agreed to participate in a transition program for inmates who had been in segregation. He participated in the program, held a kitchen job, maintained a clear conduct report, turned in all his program assignments on time, and was allowed recreation and showers every day. In 2021, he appealed a district court decision in a lawsuit he had filed about conduct reports he received. Warden Sevier learned about the appeal on November 1, 2021. At that point, Mr. Love

was housed in the New Castle Annex in a Level 4 general population area and was not having any issues.

The next day, however, Warden Sevier ordered his internal investigators to lock Mr. Love up and investigate him. Warden Sevier told the investigators that he did not want Mr. Love at his facility and that Mr. Love would have to remain in segregation until he was transferred. Captain Lunsford handcuffed Mr. Love and took him to lockup. When Mr. Love asked Captain Lunsford why he was being taken to lockup, Captain Lunsford said that he did not know. Mr. Love believes that, as the captain of Mr. Love's unit, Captain Lunsford should have asked questions and not just followed orders. Reading the complaint liberally and making all reasonable inferences in Mr. Love's favor, Mr. Love is also understood to allege that, during this time, he could not hold a prison job or participate in programming, had his access to his property restricted, and was limited to two showers and two recreation periods per week.

After Mr. Love was moved to lockup, Internal Investigator Joseph and others whose names are unknown started a meaningless investigation in a "witch hunt" to send Mr. Love back to department-wide segregation. After the investigation was complete, no conduct report was issued and no rule violation was found, but they kept Mr. Love on segregation, allegedly due to recent negative adjustment and transition unit failure. But really, they kept him on segregation because Warden Sevier had told them that he did not want Mr. Love in his facility.

After the investigation was complete, Warden Sevier also ordered that Mr. Love be transferred to a more severe lock-up. Mr. Love suffered increased restrictions on the property he could possess, and he was placed in a "hard cell." Even though New Castle has a Level 4 general population area where Mr. Love had previously been housed, Warden Sevier ordered that Mr. Love be kept in segregation until he was transferred to another facility's general population.

Once Mr. Love was moved to the restricted housing unit, Lieutenant Storms placed him in a hard cell, with no desk, shelves, or towel racks. Such cells are normally used for inmates who are a threat to themselves or others, but Mr. Love was not a threat to himself or others. While housed in the hard cell, Mr. Love faced restrictions. He could not participate in programming, his recreation opportunities were severely limited, and his access to law library staff, medical staff, and medical care was limited. At one point, Lieutenant Storms cut off the power to Mr. Love's cell, so Mr. Love could not watch TV. Mr. Love also could not use a radio because he did not have any power, and Lieutenant Storms would not let him have batteries. In addition, at Lieutenant Storms's direction, the air conditioner ran all year—even in the winter—so Mr. Love's cell was very cold. Sometimes ice formed on his cell windows. At one point, Lieutenant Storms put a sandbag in front of Mr. Love's cell door. Mr. Love asked him to move it so that some of the cold air could escape his cell, but Lieutenant Storms would not move it.

Sometimes general population inmates and new arrivals who needed to quarantine would be housed on Mr. Love's unit. They did not have to be cuffed when escorted out of their cells, but Mr. Love did have to be cuffed. Mr. Love asked why that was true because he was a general population-approved inmate awaiting transfer. He was told that it was because he was in segregation. Mr. Love believes that this was an equal protection violation and that he should be treated the same as other general population inmates.

At the time Mr. Love filed his complaint, he had been housed in segregation for about five months. He alleges that, during that time, he did not receive any meaningful review of his status and that all his review papers simply say that he is on administrative hold and that additional observation is needed. Mr. Love has been told that he is still in segregation because he is waiting

4

for a bed to open up in Level 4 general population, but that is not true because other people have been transferred to Level 4 general population.

Classification Supervisor Cecil and Case Manager Page blindly signed off on Mr. Love's segregation reviews even though there was no basis for Mr. Love to be in segregation and they did not even attend all his segregation review meetings. Case Manager Page told Mr. Love that Warden Sevier did not have to tell them why he wanted Mr. Love in segregation and that they have to follow his orders. Case Manager Nemore knew that Mr. Love's segregation was unjustified but did not speak up on Mr. Love's behalf. Assistant Warden French blindly went along with Warden Sevier's segregation decision and falsely signed off on Mr. Love being a transition unit failure.

When Mr. Love appealed the classification decision, IDOC Central Office Classification employee Derek Christian returned it to him and said that he did not know why Mr. Love sent it. He also stated that, if Mr. Love had classification concerns, he should address it with the people who denied him before. If Mr. Christian had just investigated on his computer, he would have seen that Mr. Love had been in segregation unjustifiably for multiple months. Mr. Love believes that Mr. Christian violated his right to a review of his segregation status.

Major Davis is the chief of security. Mr. Love believes that, if he needed to be confined, Major Davis should have initiated that confinement. But, after Mr. Love had been in segregation for multiple months, he asked Major Davis about his placement, and Major Davis said he was there because he had been approved for a Level 4 general population transfer. Mr. Love asked why he was in segregation rather than in New Castle's Level 4 general population area. Major Davis said that he was not approved for the Level 4 area at New Castle, so he had to wait for transfer. Major Davis also did not seem to know why Mr. Love was in segregation.

### III. Discussion of Claims

Applying the screening standard to the factual allegations in the complaint certain claims are dismissed while other claims shall proceed as submitted.

**A. Claims that Must Be Dismissed**

*1. Official-Capacity Claims*

Mr. Love states that he is suing all defendants in their individual and official capacities. As to Mr. Love's official-capacity claims for money damages against state employees, the claims are really claims against their employer, the IDOC. Mr. Love cannot recover money damages from the IDOC under 42 U.S.C. § 1983. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Mr. Love could, in theory, obtain injunctive relief from a state employee sued in his official capacity, but the only injunctive relief he seeks—an order requiring New Castle to stop violating its policies—is moot because he is no longer housed at New Castle. A dispute becomes moot when the court can no longer provide relief to the plaintiff. *Ruggles v. Ruggles*, 49 F.4th 1097 (7th Cir. 2022); *see also Watkins v. United States Dist. Ct.*, 37 F.4th 453, 457 (7th Cir. 2022) ("If intervening circumstances deprive the plaintiff of a personal stake in the outcome, 'the action can no longer proceed and must be dismissed as moot.'" (*quoting Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72, (2013)).

As to Mr. Love's official-capacity claims for money damages against the defendants who are employees at New Castle, these are really claims against their employer—GEO Group, the private contractor that runs New Castle for the IDOC. Because GEO Group acts under color of state law by contracting to perform a government function, it is treated as a government entity for purposes of § 1983 claims. *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). GEO Group therefore "cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat*

6

*superior* for constitutional violations committed by their employees. They can, however, be held liable for unconstitutional . . . policies or customs." *Simpson v. Brown Cty.*, 860 F.3d 1001, 1005–06 (7th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). But Mr. Love has not alleged any facts plausibly suggesting that the incidents described in his complaint occurred as a result of GEO Group policies or customs. Again, Mr. Love could theoretically bring an official-capacity claim for injunctive relief against a GEO Group employee, but, as explained, all his claims for injunctive relief are moot.

Accordingly, Mr. Love's official-capacity claims for damages are **dismissed for failure to state a claim upon which relief can be granted**, and his official-capacity claims for injunctive relief are **dismissed for lack of jurisdiction** because they are moot.

   2.  *Individual-Capacity Claims Against Internal Investigators Sanford and Privett*

Mr. Love names Internal Investigators Sanford and Privett as defendants in the caption of his complaint, but the text of complaint includes no allegations about them at all—let alone that they engaged in wrongdoing. Accordingly, his individual-capacity claims against them are **dismissed for failure to state a claim upon which relief can be granted**.

   3.  *Individual-Capacity Claims Against Captain Lunsford*

The Court understands Mr. Love to be suing Captain Lunsford in his individual capacity because he transferred Mr. Love to segregation even though there was no cause for him to do so. Such claims implicate the due process clause of the Fourteenth Amendment. State prisoners have a liberty interest under the Fourteenth Amendment due process clause in avoiding indefinite or prolonged assignments to administrative segregation units that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (cleaned up); *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). "In assessing

whether disciplinary segregation amounts to a constitutional violation, this court looks to 'the combined import of the duration of the segregative confinement and the conditions endured.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). "Although relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest may arise from a long term of confinement combined with atypical and significant hardships." *Id.*; *see Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) (noting that a "considerably shorter period of segregation [than six months] may, depending on the conditions of confinement and on any additional punishments, establish a [due process] violation").

Captain Lunsford allegedly blindly followed orders to move Mr. Love to a segregation unit while an investigation took place. Mr. Love makes no allegations about how long the investigation lasted, nor does he appear to be complaining about the conditions he experienced during this period. Regardless, at worst, during the investigation, Mr. Love was not able to hold a prison job or participate in programming, had his access to property restricted, and was limited to two showers and two recreation periods per week. After the investigation was complete, Warden Sevier ordered that Mr. Love be transferred to a more severe lock-up where he faced additional restrictions and more harsh conditions. Without any indication as to how long Mr. Love was held in segregation pending completion of the investigation, these allegations are insufficient to state a due-process claim against Captain Lunsford. *See Hardaway*, 734 F.3d at 743 ("[R]elatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions."); *see also Townsend v. Fuchs*, 522 F.3d 765, 767–68 (7th Cir. 2008) (holding that due process rights were not implicated where the plaintiff was placed in administrative segregation without a hearing or procedural protections and spent 59 days in

8

segregation pending investigation of his role in a prison riot, during which time he was not allowed to leave his cell, was not allowed to have contact with friends, family, or other inmates, was forced to share a small single-man cell with another inmate, had to sleep on a thin, wet, moldy, foul-smelling mattress on a concrete floor right next to a shower).

Accordingly, Mr. Love's individual-capacity claims against Captain Lunsford are **dismissed for failure to state a claim upon which relief can be granted**.

> 4. *Individual-Capacity Claims Against Internal Investigator Joseph, Classification Supervisor Cecil, Case Manager Page, Case Manager Nemore, Assistant Warden J. French, Major Davis, and Derek Christian*

It appears that Mr. Love may be attempting to hold the following defendants responsible for his continued placement in segregation and the conditions he experienced while housed there: Internal Investigator Joseph, Classification Supervisor Cecil, Case Manager Page, Case Manager Nemore, Assistant Warden J. French, Major Davis (Defendants Joseph, Cecil, Page, Nemore, French, and Davis are collectively referred to as the "New Castle Defendants"), and Classification employee Derek Christian. However, "[i]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation . . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). The allegations of Mr. Love's complaint make clear that Warden Sevier was the moving force behind Mr. Love's initial placement in segregation, his continued placement in segregation, and—by way of extension—the conditions that Mr. Love experienced while housed in segregation. Mr. Love has not alleged any facts plausibly suggesting that the New Castle Defendants or Mr. Christian were responsible for

his placement in segregation, his continued placement in segregation, or the conditions he experienced while in segregation, and he has not alleged any facts plausibly suggesting that the New Castle Defendants or Mr. Christian had the ability to remove him from segregation or change his conditions of confinement. Accordingly, his claims against the New Castle Defendants and Mr. Christian are **dismissed for failure to state a claim upon which relief may be granted**.

   *5. Individual-Capacity Equal Protection Claims*

The Court also understands Mr. Love to be attempting to raise a Fourteenth Amendment equal protection claim based on the fact that he had to be handcuffed when he was transported out of his cell, but other general population inmates did not. This claim fails because Mr. Love does not specify who was responsible for the disparate treatment. In addition, to prevail on an equal protection claim, Mr. Love must show that similarly situated incarcerated persons have been treated differently and that that there is no rational relation between the dissimilar treatment and any legitimate penal interest. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000); *see also McDonald v. Village of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004) (discussing similarly situated requirement). Mr. Love's complaint does not allege facts plausibly supporting the inference that the inmates who were not handcuffed were similarly situated to him. To the contrary, his complaint suggests that they are not similarly situated, in that the inmates who were not handcuffed were general population inmates who happened to be temporarily housed in the same area as Mr. Love for quarantine, but Mr. Love was a general-population-eligible inmate who was ordered to segregation while an investigation occurred and was then held pending transfer to another facility. Accordingly, any equal protection claim under the Fourteenth Amendment is **dismissed for failure to state a claim on which relief can be granted.**

### B. Claims that Shall Proceed

Construing the complaint liberally, Mr. Love has adequately alleged a First Amendment retaliation claim against Warden Sevier, and that claim **shall proceed**. This claim is based on the theory that Warden Sevier placed Mr. Love in segregation until he could be transferred because Mr. Love filed an appeal of a district court decision related to conduct reports.

Mr. Love has also adequately alleged an Eighth Amendment conditions of confinement claim against Lieutenant Storms, and that claim **shall proceed**. This claim is based on the theory that Lieutenant Storms was responsible for placing Mr. Love in an extremely cold hard cell without power. During this placement, Mr. Love could not participate in programming, and his access to recreation, law library staff and medical care was limited.

Finally, construing the complaint liberally, Mr. Love has adequately alleged Fourteenth Amendment due process and Eighth Amendment conditions of confinement claims against Warden Sevier based on the allegations that Warden Sevier ordered Mr. Love's placement in the DHU (presumably the disciplinary housing unit) in a hard cell and then denied him meaningful review of his status thereafter. Those claims **shall proceed**.

### C. Summary

In summary, the following claims shall proceed:

- Individual-capacity First Amendment retaliation claim for damages against Warden Sevier;

- Individual-capacity Eighth Amendment conditions of confinement claims for damages against Lieutenant Storms and Warden Sevier; and

- Individual-capacity Fourteenth Amendment due process claims for damages against Warden Sevier.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed for the reasons stated above. If Mr. Love believes that additional

11

claims were alleged in the complaint, but not identified by the Court, he shall have **through February 7, 2023,** in which to identify those claims.

The **clerk is directed** to terminate Internal Investigator Sanford, Internal Investigator Privett, Captain Lunsford, Internal Investigator Joseph, Classification Supervisor Cecil, Case Manager Page, Case Manager Nemore, Assistant Warden J. French, Major Davis, and Derek Christian as defendants on the docket.

### IV. Conclusion and Service of Process

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to defendants Mark Sevier and Storms in the manner specified by Rule 4(d). Process shall consist of the complaint filed on April 25, 2022, dkt [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

Mr. Love's motion for status update, dkt. [12], is **granted** to the extent that the Court explains that is has now screened his complaint.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 1/10/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Warden Mark Sevier
New Castle Correctional Facility
1000 Van Nuys Rd.
P.O. Box E
New Castle, IN 47362

Lieutenant Storms
New Castle Correctional Facility
1000 Van Nuys Rd.
P.O. Box E
New Castle, IN 47362

TONY LIONEL LOVE
127260
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838