UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TONY LIONEL LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00811-JPH-MG |
| | ) | |
| MARK SEVIER, | ) | |
| STORMS Lt., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING FINAL JUDGMENT**

Plaintiff Tony Lionel Love brought this matter alleging that defendant Warden Mark Sevier placed him in segregation in retaliation for appealing a district court decision related to conduct reports against him, that Warden Sevier and Lieutenant Storms subjected him to unconstitutional conditions of confinement while in segregation in violation of the Eighth Amendment, and Warden Sevier denied him meaningful review of his placement in segregation in violation of his Fourteenth Amendment Due Process Rights. Both Plaintiff and Defendants have moved for summary judgment. Dkts. 68, 74. For the reasons below, Plaintiff's motion is **DENIED** and Defendants' motion is **GRANTED**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ.

1

P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J.*

*Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).  When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)).

Here, however, Mr. Love has not provided any evidentiary citations in the facts section of his motion for summary judgment, *see* dkt. 69 at 2–3, and has not responded to Defendants' summary judgment motion. The Court therefore treats Defendants' supported factual assertions as uncontested.  *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(a), (b), (f).

## II.
## Factual Background

### A. The Parties

At all relevant times, Mr. Love was an inmate at New Castle Correctional Facility ("New Castle"). Dkt. 1. Mark Sevier was the Warden at New Castle. *Id.* at 2-4; dkt. 75 at 3. Larry Storms was a lieutenant at New Castle. Dkts. 1 at 6-8; 75 at 4.

### B. Mr. Love's Time in Segregation

Mr. Love transferred to New Castle on February 25, 2021, in order to participate in the S.T.A.N.D. Program, which is a transitional program for inmates previously housed in segregation. Dkt. 76-6. On October 21, 2021,

Assistant Facility Administrator ("AFA") Jennifer French recommended he be transferred as a program "[f]ailure." *Id.* No reason was listed on the review form. *Id.*

On November 1, 2021, the Seventh Circuit issued an Order in one of Mr. Love's habeas cases, in which Warden Sevier was the respondent. Dkt. 1 at 2.[1] The next day, on November 2, 2021, Mr. Love was moved to administrative restricted housing, cell 112. Dkt. 76-7.

The form transferring Mr. Love to restricted housing with "I&I"—for IDOC's "Investigations and Intelligence" Division—listed as the "circumstance." *Id.* An inspection of cell 112 was conducted the same day and no issues were noted. Dkt. 76-8. An inventory list of personal property Mr. Love was permitted to have in restricted housing was also created that day. Dkt. 76-9. It indicated that he was allowed his GTL tablet, five books, one religious book, and various hygiene items. *Id.* Mr. Love signed both forms. Dkts. 76-8, 76-9.

While in administrative restricted housing, Mr. Love received reviews on November 10, November 18, December 9, December 16, and December 23. Dkts. 76-10, 76-11, 76-14 at 1, 12, 16. The notes for each of these reviews indicate that no changes were recommended because there was a pending

---

[1] The Court takes judicial notice of two matters: (1) *Love v. Littlejohn*, Case No. 2:20-cv-00281-JRS-MG (S.D. Ind., 2020), a disciplinary habeas matter where Mr. Love challenged a conviction of IDOC Adult Disciplinary Code A-102, battery, against a staff member, and (2) *Love v. Neal*, Case No. 21-2406 (7th Cir., 2021), the appeal of *Littlejohn*. The Seventh Circuit ordered Warden Sevier to file an Amended Jurisdictional Statement in Case No. 21-2406, dkt. 8, on November 1, 2021. Warden Sevier was included as the respondent-appellee solely in his official capacity as Mr. Love's custodian at the time.

investigation. *Id.* Further, his Offender Evaluation and Performance Report indicates he "did [a] good job but went to [administrative restricted housing] per I&I." Dkt. 76-14 at 5.

Mr. Love also received an annual classification hearing on December 20, 2021. *Id.* at 4. He submitted a classification appeal, challenging the decision by I&I staff that Mr. Love required additional observation and would remain in segregation. *Id.* at 15. That appeal was denied because "investigations are not under the purview of [New Castle] classification." *Id.* Nothing in the record indicates he appealed his classification hearing decision.

On January 4, 2022, a Report of Inter-Institutional Transfer was created for Mr. Love, requesting a facility transfer due to "departmental needs" and the "pending investigation." *Id.* at 14. It was recommended by the Counsel/Unit Team, Superintendent, and Central Office Classification Division. *Id.* Two weeks later, on January 18, a second Report of Inter-Institutional Transfer was created. Dkt. 76-12. It was also recommended by the Counsel/Unit Team, Superintendent, and Central Office Classification Division. *Id.* However, this Report indicated the reason for transfer was "poor adjustment," the provided explanation was "transition unit failure," and the rationales given were "recent negative adjustment," "departmental needs," and "transition failure." *Id.*

Warden Sevier also wrote a memo on January 18 detailing the rationale for his recommendation that Mr. Love be transferred. Dkt. 76-13. Specifically, he stated that "based on investigative findings," Mr. Love had not meaningfully engaged himself in pro-social behaviors, but rather used his "clear influence" to

5

"control and manipulate [] both staff and offender[s]." *Id.* Additionally, he identified Mr. Love as a member of a Security Threat Group and indicated that his "influence over other Security Threat Group affiliates in the Transition Unit is alone cause for concern." *Id.* Warden Sevier concluded that Mr. Love's "continued presence in the Transition Unit at [New Castle] creates a risk to the orderly running of the facility." *Id.*

### C. Cell Conditions in Segregation

While housed in administrative restricted housing, Mr. Love was placed in a cell with no desk or shelves. Dkt. 76-5 at 7 ("These items were removed from those cells due to safety and security reasons because offenders were tearing them off the wall and causing safety issues."). He was not permitted to have a television in his cell, but he did have access to a tablet with entertainment subscriptions available. Dkts. 76-5 at 8; 76-9. Mr. Love was also not permitted to have items "in excessive quantities" and was required to submit request slips to get anything, including new hygiene items, out of his personal property storage. Dkts. 76-9; 76-5 at 8. Medications that were considered "keep on person" were also not permitted in the cell and the air conditioning was kept on all year. Dkt. 1 at 7. Further, medical, psychology, chaplain, and law library staff were only allowed to go to administrative restrictive housing when Lt. Storms permitted them. *Id.* at 7-8.

Mr. Love also contends that the power was shut off to his cell and that Lt. Storms placed a beanbag in front of his cell door to keep the cold air in. *Id.* Lt. Storms denies both allegations. Dkt. 76-4 at 5-8.

6

Mr. Love brought this case in April 2022, dkt. 1, and is proceeding on claims that (1) Warden Sevier retaliated against him for appealing a district court decision related to conduct reports against him; (2) Warden Sevier and Lieutenant Storms subjected him to unconstitutional conditions of confinement while in segregation; and (3) Warden Sevier denied him meaningful review of his placement in segregation, *see* dkt. 13 at 11 (screening order).

### III.
### Discussion

**A. Retaliation Claim**

Mr. Love alleges that Warden Sevier placed him in segregation in retaliation for appealing court decisions regarding his conduct reports. To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Warden Sevier does not dispute that the first two elements were satisfied, dkt. 75 at 6, so the Court focuses on the third.

7

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999). Further, "[s]uspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680 (cleaned up) (standing alone, fact that inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not create triable issue of fact as to retaliation claim because another, non-retaliatory motive existed. *Id.* at 680–81).

Mr. Love contends that he was complying with his transition programming with no issues until the facility learned he was "appealing a decision concerning assault on staff that occurred in 2018." Dkt. 1 at 4. The next day, he was transferred to administrative restricted housing. *Id.* at 3.

Warden Sevier, however, attests that he did not know about Mr. Love's appeal. Dkt. 76-2 at 4. Mr. Love has failed to designate evidence to dispute that

8

assertion. That is enough to entitle Warden Sevier to summary judgment on the retaliation claim. *See Stagman*, 176 F.3d at 999–1000 ("Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech.").

Further, the record indicates that as early as October 21, 2021—over a week before the Seventh Circuit Order Mr. Love believes prompted Warden Sevier to retaliate against him—AFA French conducted a S.T.A.N.D. Unit review for Mr. Love and recommended his transfer as a program "[f]ailure." Dkt. 76-6. So while the timing of his transfer may have appeared suspicious to Mr. Love, the undisputed designated evidence reflects that the process initiating the transfer had already begun with no designated evidence connecting it to his appeal. Thus, no reasonable jury could find on the record that Mr. Love's appeal was a motivating factor in Warden Sevier recommending his transfer to administrative restricted housing. *See Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020) (affirming summary judgment when plaintiff did not designate evidence "to overcome the significant deference owed to the Defendant's non-retaliatory justification for the transfer"). Therefore, Warden Sevier's motion for summary judgment is granted and Mr. Love's motion for summary judgment is denied as to this claim.

### B. Conditions of Confinement Claim

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Inmates must be

9

provided "the minimal civilized measure of life's necessities," such as adequate heat, clothing, shelter, bedding, hygiene materials, and sanitation. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted); *see Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014).

A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

### 1. Temperature Conditions

Mr. Love alleges in his complaint that the air conditioning was on all year, making his cell so cold that ice froze on the window. Dkt. 1 at 7. Further, he alleges Lieutenant Storms placed a beanbag in front of his cell door to keep cold air inside his cell. *Id.* at 8. Mr. Love has not, however, designated evidence to support the allegations about his frozen window or air conditioning, nor does

he provide any support for his unsworn statement. In his interrogatories, Mr. Love did ask Lieutenant Storms about the beanbag allegations. Dkt. 76-4 at 7-8. Lieutenant Storms's sworn responses deny that he did so. *Id.*

There is no designated evidence regarding the temperatures in Mr. Love's cell. Mr. Love's unsworn statements that his cell was so cold that his window froze and that Lieutenant Storms purposefully placed a beanbag in front of his cell door to keep the cold air inside are insufficient to create a question of material fact. *See MMG Fin. Corp. v. Midwest Amusements Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011). Instead, to proceed past summary judgment, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). He has failed to do so here by not providing any admissible evidence to support his allegations.

Because there is no designated evidence that Mr. Love's cell was unbearably cold, the defendants are entitled to summary judgment, and Mr. Love's motion for summary judgment is denied on this claim.

### 2. Other Conditions

Mr. Love also alleges that the chaplain and medical and psychology staff are only able to visit at approved times. Dkt. 1 at 7. He further alleges that he is required to use request slips to access hygiene products in his property storage; prescribed medications that are considered "keep on person" are only permitted in cells with Lieutenant Storms' permission; he is not permitted batteries for his radio; and there is no desk, shelf, or towel rack in the cell. *Id.*

11

Lieutenant Storms argues that none of these conditions are objectively serious. Dkt. 75 at 11.

When reviewing conditions of confinement claims, courts "consider first whether the adverse conditions complained of were 'sufficiently serious,' such that the acts or omissions of prison officials giving rise to these conditions deprived the prisoner of a 'minimal civilized measure of life's necessities.'" *Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650, 664-5 (7th Cir. 2012) (*quoting Farmer,* 511 U.S. at 834). Here, the Court need not proceed past this first step because Mr. Love has not designated evidence to support this element of a conditions claim. Having property stored outside of his cell, having non-emergency access to services only during scheduled times, and not having a towel rack are not the sort of conditions that implicate potential constitutional violations. *See Giles*, 914 F.3d at 1051 ("While we do not deny that Giles experienced harsh conditions in segregation, the record does not support a finding that he was deprived of the minimal civilized measure of life's necessities."); *Jones v. Anderson,* 116 F.4th 669, 679 (7th Cir. 2024) (dust bunnies, "film" on the toilet seat and sink, and a stained mattress in restrictive housing were not objectively severe).

Therefore, the defendants are entitled to summary judgment and Mr. Love's motion for summary judgment is denied on this claim.

### C. Due Process Claim

The Due Process Clause "applies only to deprivations of life, liberty, and property." *Isby v. Brown,* 856 F.3d 508, 524 (7th Cir. 2017). When presented

with a procedural due process challenge, the court must engage in a two-step analysis. *Id.* It must first determine "whether the plaintiff was deprived of a protected interest; if so, [it] determine[s] what process was due under the circumstances." *Id.* "Prisoners do not have a constitutional right to remain in the general population." *Id.* Rather, a protected liberty interest "is triggered only when the confinement imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019) (cleaned up). When deciding whether placement in segregation imposes atypical and significant hardship, the court "look[s] to both the duration of the segregation and the conditions endured." *Id.*

A plaintiff must "show that the conditions of his confinement in his segregated cell deviated substantially from the ordinary conditions of prison life." *Id.* In other words, "if the disciplinary measures do not 'substantially worsen the conditions of confinement' of an inmate, then he has not been deprived of a protected liberty interest." *Id.* (quoting *Miller v. Dobier*, 634 F.3d 412, 414-15 (7th Cir. 2011)). The Seventh Circuit has recognized that "six months of segregation is not an extreme term and, standing alone, would not trigger due process." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009).

Here, Mr. Love was placed in restrictive housing around November 2, 2021, after he was removed from the S.T.A.N.D. Program for program "failure." Dkt. 76-7; dkt. 76-6. He remained there until about January 24, 2022, when the IDOC central office approved his transfer to another placement. Dkt. 76-

13

12.[2] That duration of restrictive housing is too short to implicate a liberty interest, particularly given his conditions of confinement explained in Part B above and Warden Sevier's explanation that Mr. Love was "orchestrat[ing] activity" of Security Threat Groups in his placement. Dkt. 76-13; *Lisle*, 933 F.3d at 721 (Mr. Love must show that he was both in segregation for a significant enough length of time *and* that the conditions in segregation amounted to an "atypical and significant hardship."). Indeed, there is "generally no liberty interest . . . at stake" for "short terms of segregation" lasting fewer than six months. *Marion*, 559 F.3d at 696.

But even if Mr. Love's restrictive placement could give rise to a liberty interest, he received periodic reviews that satisfied due process. What's required is "informal, nonadversarial due process" that provides "some notice of the reasons for the inmate's placement." *Westefer v. Neal,* 682 F.3d 679, 684-85 (7th Cir. 2012). Here, Mr. Love received several reviews indicating that he was to remain in restrictive housing pending the ongoing IDOC investigation. *See* dkt. 76-10; 76-11; 76-14; *Felton v. Brown,* 129 F.4th 999, 1008 (7th Cir. 2025) ("The frequency of [the required] periodic review is generally committed to the discretion of prison officials."). He has designated no evidence allowing a reasonable jury to find that those reviews were "a pretext for indefinite confinement." *Felton*, 129 F.4th at 1008; *cf. Isby*, 856 F.3d at 529 (reversing

---

[2] While the details about Mr. Love's new placement are vague, the transfer approval does not list the new recommended placement as restrictive housing, dkt. 76-12, and Mr. Love has not designated any evidence that he remained in restricted housing after January 2022.

summary judgment when plaintiff had been in restrictive housing for years and a reasonable jury could find that officials merely went "through the motions of conducting a review when they had developed a pre-review conclusion").

Mr. Love therefore has not met his burden to designate evidence that his placement triggered due process protections or to show "some reason why the prison's actions . . . did not provide sufficient process." *Felton*, 129 F.4th at 1008 (affirming dismissal for failure to state a claim when the first administrative-confinement review was done six months and five days into the confinement). Accordingly, the defendants are entitled to summary judgment on this claim as well.

## IV.
## Conclusion

Mr. Love's motion for summary judgment is **DENIED**. Dkt. [68]. The Defendants' motion for summary judgment is **GRANTED** for all claims. Dkt. [74].

Final judgment consistent with this Order and the Court's screening order, dkt. [13], will issue in a separate entry.

**SO ORDERED.**

Date: 3/24/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

TONY LIONEL LOVE
127260
INDIANA STATE PRISON
INDIANA STATE PRISON
Inmate Mail/Parcels
One Park Row
MICHIGAN CITY, IN 46360

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com